**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ATLANTECH, INC.

       Plaintiff                             Case No. 11-50076
                                             Hon. Lawrence P. Zatkoff

AMERICAN PANEL CORP.,
UNIVERSAL AVIONICS SYSTEMS CORP.,
and APC ACQUISITION CORP.,

       Defendants.

NEXEL DEFENSE AND AEROSPACE, INC.

       Respondent.

_____/

<u>**ORDER GRANTING MOTION TO QUASH**</u>

**I.  INTRODUCTION**

      This matter is before the Court on Nexel Defense and Aerospace, Inc's Motion to Quash

Third-Party Subpoena [dkt 3] and renewed Motion to Quash Third-Party Subpoena [dkt 14],[1] and

Plaintiff's Cross-motion to Compel Discovery from Nexel [dkt 7], and Motion for Leave to File

Supplemental Exhibits [dkt 12].  The parties have fully briefed the motions.  The Court finds that

the facts and legal arguments pertinent to the motions are adequately presented in the parties' papers,

and the decision process will not be aided significantly by oral arguments.  Therefore, pursuant to

E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be decided on the briefs

submitted.  For the following reasons, Nexel Defense and Aerospace, Inc's Motion to Quash Third-

_____

[1] This case actually originated when APC Acquisition Corp. ("Defendant") moved to quash a third-party subpoena served on Nexel Defense and Aerospace, Inc ("Nexel").  Nexel then filed a motion concurring in Defendant's motion.  Later, Defendant then withdrew its motion and Nexel filed a renewed motion.

Party Subpoena [dkt 3] and renewed Motion to Quash Third-Party Subpoena [dkt 14], and Plaintiff's Motion for Leave to File Supplemental Exhibits [dkt 12] are GRANTED. Plaintiff's Cross-motion to Compel Discovery from Nexel [dkt 7] is DENIED.

## II. BACKGROUND

Plaintiff is an export-trading company that specializes in providing United States-manufactured aircraft displays to foreign aircraft electronics manufacturers, specifically the Russian market. Plaintiff typically purchased the displays from Defendant American Panel Corporation ("APC"),[2] then a wholly owned subsidiary of Defendant Universal Avionics Systems Corporation ("Universal"), a company that designed, manufactured and finished the displays. According to Plaintiff, Defendant was aware that a majority of the displays purchased from APC by Plaintiff were intended for Ulyanovsk Instrument Manufacturing Design Bureau ("UIMDB")—Plaintiff's primary Russian customer.

Based on Plaintiff's contentions that Defendant, after acquiring APC, was in breach of several agreements,[3] on February 21, 2007, Plaintiff filed an action against Defendant, APC, and Universal in the United States District Court for the District of Massachusetts (the "Massachusetts Case"). In the Massachusetts Case, Plaintiff alleges that Defendant sold several displays to UIMDB, a company delineated in the NCA, by selling the displays to Nexel, who resold those displays to

---

[2] According to Plaintiff, Atlantech went out of business in 2008. Defendant and Nexel, however, dispute this. *See* Subsection IV.2.a, *infra*.

[3] On January 29, 2007, APC, with the approval of Universal, sold its assets to Defendant. Pursuant to the terms of an asset purchase agreement between APC, Defendant, and Universal, Defendant assumed all of APC's contractual obligations, including the obligations under a non-compete agreement (the "NCA") and two sales contracts.

UIMDB with Defendant's knowledge.[4]

Of relevance to the matter before this Court, Plaintiff served a subpoena on Nexel, a non-named party in the Massachusetts Case, requesting documents and deposition testimony from Nexel related to Defendant's sales to UIMDB, all of which allegedly were made through Nexel. Because Nexel is a Michigan corporation within the Court's jurisdiction, on or about December 30, 2010, the Court issued a subpoena to Nexel for deposition testimony by a qualified representative pursuant to Federal Rule 30(b)(6) and for the production of certain documents in connection with that noticed deposition.

With respect to the topics covered in the subpoena, it requests testimony regarding:

1. Nexel's relationship with Defendant, including but not limited to sales and potential sales of Defendant's products into the Russian marketplace;

2. Nexel's relationship with UIMDB, including but not limited to the sale and purchase of Defendant's products;

3. The Exclusive Distribution Agreement;[5]

---

[4] The NCA expressly prohibits APC, which now applies to Defendant, from directly or indirectly soliciting or accepting any business from Plaintiff's customers, which includes UIMDB, without Plaintiff's express written consent during the term of two sales contracts between APC and Plaintiff.

[5] The subpoena defines "Exclusive Distribution Agreement" as the agreement titled "American Panel Corporation and Nexel Defense and Aerospace, Inc. Distribution Agreement", entered into between Defendant and Nexel. The agreement grants Nexel the exclusive distribution rights to certain products of Defendant to customers in Russia, the Commonwealth of Independent States, and Eastern Europe.

4. Communications between Nexel and Defendant concerning Plaintiff;

5. Nexel's relationship with Plaintiff; and

6. Nexel's business with the other customers,[6] including communications with Defendant concerning those customers, communications with those businesses concerning Defendant's products, sales of Defendant's products to those customers, and the purchase of products from Defendant intended for resale to those customers.

With respect to documents that the subpoena requests Nexel to produce, it requests:

1.    Those related to communications concerning the sale of Defendant's products to UIMDB, the Exclusive Distribution Agreement, and drafts of that agreement;

2.    Those related to any communications between Nexel and Defendant and Nexel and UIMDB concerning Plaintiff; and

---

[6] The subpoena lists the following customers that the NCA prohibited Defendant from accepting or soliciting business from: Aviapribor, Aerospace Equipment Corporation, Elektroavtomatika, GosNIIAS, Leninets, Russian Avionics, Technocomplex, Ramenskoye, and Tranasas/Kronstadt.

4

3.  Those related to any potential sale or actual sales of Defendant's

products to other customers, as defined in footnote 5, *supra*.

Procedurally, on January 4, 2011, Plaintiff served the subpoena by hand on Nexel.  On January 19, 2011, Nexel objected to the third-party subpoena under Fed. R. Civ. P. 45.  On January 21, 2011, Nexel filed a motion that concurred with Defendant's Motion to Quash.  In response, Plaintiff filed its response to Defendant and Nexel's motions to quash and a motion to compel Nexel's compliance with the subpoena.[7]  Subsequently, Plaintiff filed a motion for leave to file supplemental exhibits.  Then, on March 23, 2011, Defendant withdrew its motion to quash, largely due to a status conference held in the Massachusetts Case.[8]  At that point, Nexel filed a renewed motion to quash the subpoena, which Plaintiff has responded to.  Nexel contends that the subpoena seeks the production of confidential and commercial information and trade secrets, which, if it complied with the subpoena, would force it to turn over this information to its direct

---

[7] Plaintiff initially filed its response and cross-motion to compel in the same motion on February 7, 2011.  To clarify the Court's record and briefing schedule, Plaintiff subsequently filed a separate motion to compel two days later.

[8] On March 17, 2011, the district judge in the Massachusetts Case held a status conference, during which he ordered Defendant to produce the documents requested directly from Defendant with the protection of an "attorney eyes only" protective order.  Accordingly, on March 23, 2011, Defendant withdrew its motion to quash the subpoena to Nexel.  The district judge in the Massachusetts Case heard only Defendant's arguments regarding the subpoena.  The Massachusetts Court did not address Nexel's objections or make any ruling regarding the subpoena to Nexel.  The transcript of the status conference has been filed with the Court as Exhibit B to Plaintiff's motion for leave to file supplemental exhibits.  Further, the Court grant's Plaintiff's motion for leave to file supplemental exhibits because the two-attached exhibits (a copy of the Stipulated Protective Order ("SPO") entered on March 17, 2011, in the Massachusetts Case and a copy of the transcript from a status conference, held on March 17, 2011) update the Court on relevant matters that occurred in the Massachusetts Case since the filing of the parties' initial briefs.

5

competitor—Plaintiff.

### III.  LEGAL STANDARD

Under the Federal of Rules of Civil Procedure, the scope of discovery is broad, entitling parties to "obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).  With respect to non-parties, pursuant to Fed. R. Civ. P. 45(a), a party may serve a subpoena on a non-party, *i.e.* Nexel, commanding that party to "attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises" at a specified time and place.  *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection.").

Upon a timely motion, the Court *must* quash a subpoena that: "(i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of *privileged* or *other protected matter*, if no exception or waiver applies . . . or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added).  And, the Court *may* quash or modify a subpoena that requires "disclosing *trade secret* or other *confidential* research, development, or *commercial information*." *Id.* at 45(c)(3)(B)(I) (emphasis added).  The party seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996); *see also Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995).

### IV.  ANALYSIS

Nexel argues that the subpoena should be quashed by this Court because it seeks production of (1) privileged material and (2) trade secrets and confidential commercial business; and (3) Plaintiff's subpoena is overboard, thus creating an undue burden on Nexel.  In this case, the Court

will review whether the requested documents by Plaintiff are considered (1) "privileged or other protected matter"; or (2) "trade secret or other confidential research, development, or commercial information" pursuant to Fed. R. Civ. P. 45(c)(3)(A)–(B). After review of the parties' briefs and exhibits attached thereto, the Court need not address whether the subpoena places an undue burden on Nexel due to the Court's finding that the requested documents and information are "trade secret or other confidential research, development, or commercial information" of Nexel.[9]

### (1) PRIVILEGED OR OTHER PROTECTED MATTER

The Court first notes that a document titled "Privilege Log" has been filed in the Massachusetts Case, which the parties reference in their arguments before this Court. It contains a list of documents which Defendant considers privileged and states the reasons for those assertions. The Privilege Log contains three relevant entries: (1) the Exclusive Distribution Agreement; (2) the Protocol of Intentions; and (3) any email between Niemzyk, Bonham, and Boris Danilov regarding the Exclusive Distribution Agreement, Protocol of Intentions, and their business relationships. According to the Privilege Log, Defendant considers each document entry privileged because they are "proprietary, confidential, [or] trade secrets."

With respect to a claim of privilege, the party asserting the privilege bears the burden of establishing that the privilege exists. *Ross v. City of Memphis*, 423 F.3d 596, 606 (6th Cir. 2005)

---

[9] In a footnote, Defendant also argues that the subpoena should be quashed because it does not allow Nexel a reasonable amount of time to comply. To the extent that Nexel still relies on this argument, the deposition was noticed to take place four weeks after service of the subpoena; that amount of time is reasonable under federal law. *See* Fed. R. Civ. P. 34 (allowing thirty days for responses to document requests). In a second footnote, Defendant claims that Plaintiff did not provide Defendant with *notice* of the subpoena served on Nexel. This claim is belied by the fact that Plaintiff served a copy of the subpoena by e-mail on lead counsel of record for all three Defendants on December 30, 3010—five days prior to its service on Nexel.

(invoking the attorney-client privilege). A party's mere assertion that certain information is privileged is insufficient to meet this burden. *Vita-Mix Corp. v. Basic Holdings, Inc.*, No. 1:06 CV 2622, 2007 WL 2344750, at *3 (N.D. Ohio Aug. 15, 2007) (same).

Nexel argues that Plaintiff is attempting to circumvent the Privilege Log by obtaining the documents from Nexel rather than Defendant. As such, Nexel maintains that the Court should quash the subpoena for seeking privileged information which Plaintiff has no right to discover. In response, Plaintiff argues that the Privilege Log does not articulate any recognized privilege, and that it was not served until January 19, 2011, in this case—two weeks after service of the subpoena on Nexel.

The Court finds that Nexel's blanket assertions and arguments of privilege regarding its relationship between it and Defendant are insufficient to meets its burden. Nexel has not identified any recognized privilege in its motion and briefs, instead asserting that Defendant and Nexel "consider the information sought by [Plaintiff] proprietary, and therefore privileged." Nexel cites no legal authority directly on point, nor does the Privilege Log filed with the Massachusetts court indicate any recognized privilege, for its assertion that the requested documents and testimony are privileged according to Fed. R. Civ. 45(c)(3)(A)(iii). As such, the Court declines to quash the subpoena based upon Nexel's assertion that the requested documents and testimony are proprietary and therefore privileged. *See Vita- Mix Corp*, 2007 WL 2344750 at * 3 (denying to quash a subpoena served on a third-party because a plaintiff failed to meet its burden that the requested material was in fact covered by a recognized privilege).

### (2) TRADE SECRETS OR OTHER CONFIDENTIAL INFORMATION

Pursuant to the Michigan Trade Secrets Act ("MUTSA"), Mich. Comp. Laws § 445.1902(d), a "trade secret" is information that *both*: (i) "derives independent economic value, actual or potential,

from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."   Mich. Comp. Laws § 445.1902(d); *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410 (6th Cir. 2006); *see Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 658 ( E.D. Mich. 2007) (citing Mich. Comp. Laws § 445.1902(d)).  Even information that is a mixture of protected and unprotected material, meaning a portion of the material is in the public domain, may qualify as a "trade secret" under Michigan law. *Mike's Train House, Inc.*, 472 F.3d at 411 (applying Michigan trade secret law).

In *Allstate Imaging, Inc. v. First Independence Bank*, the Court denied to quash a subpoena served upon a non-party, finding the defendant's arguments unpersuasive that the subpoena improperly sought information that was a trade secret.  No. 08-cv-11363, 2010 WL 1416987 at *3 (E.D. Mich. Apr. 8, 2010).  At issue was a list of merchants involved in a merchant processing program between the defendant and the non-party.  *Id.* at *1.  The defendant argued that disclosure would cause the defendant to suffer irreparable damage within the credit card processing industry. *Id.*  The district court found that because the merchant processing program ended three years ago, "the information can have no effect on the current relationships [the d]efendant had with the merchants, unless the merchants still have some relationship with [the d]efendant, which [the d]efendant does not assert."  *Id.* at 2.

In a similar case in this District, a plaintiff corporation subpoenaed a non-party corporation for the production of documents relevant to the plaintiff's claims against a defendant corporation. *McNaughton-McKay, Electric Co., v. Linamar Corporation*, No. 09-CV-11165, 2010 WL 2560047, at *1 (E.D. Mich. June 15, 2010).  The district court noted that the defendant's allegations of harm

that "the disclosure of confidential information related to the [defendant/non-party] business relationship could have financially prejudicial consequences for the defendant" and that such disclosure "will have a detrimental effect on "[the defendant's] standing in the marketplace in its dealings with other OEMs" were neither specific nor substantiated. *Id.* at *2. The district court also addressed whether it should issue a protective order because the information sought may reveal trade secret or other confidential information. *Id.* at *3. The district court held, in denying the Defendant's request to quash the subpoena or issue a protective order, that "the allegation of harm [by the defendant] is speculative and lacks specificity and there is already a stipulated protective order in place which contemplates the designation of "confidential" to documents produced by a non-party." *Id.*

In this case, Nexel argues, as the affidavit of Niemczyk shows, that the information sought by Plaintiff qualifies as trade secrets or other confidential information under Mich Comp. Laws. § 445.1902. In response, Plaintiff disputes that Defendant's two contracts with Nexel (the Exclusive Distribution Agreement and the Protocol of Intentions) and the e-mail communications between Defendant, Nexel, and UIMDB are trade secrets. Plaintiff further contends that Defendant fails to show what "independent economic activity" is derived from the contracts and e-mails.

### a. *Economic value from not being known to other who could make use of it*

First, based on the parties' briefs and exhibits attached thereto, Plaintiff is one who "can obtain economic value" from the disclosure of the information Nexel seeks to protect. According to the Affidavits of Neimzyck and Bonham, Plaintiff has sold or attempted to sell products from competitors of Defendant, and these competitors are still actively competing against Defendant and Nexel. The Court, however, notes that there is a dispute as to whether Plaintiff is still an active

business.  Plaintiff's president, Nathan Bellin, states in his Affidavit that Plaintiff went out of business in late 2008.  According to corporation records attached to Nexel's brief, however, Plaintiff appears to be an active corporation, having filed an "Annual Report" as recently as March 15, 2010 with the State of Massachusetts's Corporations Division.  Additionally, aircraft display businesses, officers, executives, owners, principals and other individuals often move from one company to another or start a new company after one goes out of business. (Bonham Affidavit, at ¶13).  Nexel also notes that before Plaintiff allegedly went out of business, it served the same role with Defendant as Nexel now serves.  Therefore, Plaintiff or its officers and employees could make economical use of the information to re-enter the commercial aircraft display industry and compete against Nexel.  Further, as the president of Nexel, Bonham opines that in the commericial aircraft display industry, confidentially and secrecy of certain information, like that requested here, are vital to the going concern to remain viable and profitable.  Plaintiff does not rebut this.  As such, the Court finds that Plaintiff is one who could derive economic value from information requested from Nexel.

The Court also finds that the information has "economic value" from the fact that it is not generally known to others.  Unlike in *Allstate Imaging,* which involved a program that ended in 2007 and thus disclosure of the requested merchant list could have no effect on the current relationships between the defendant and the merchants, here, the Defendant-Nexel business relationship is vital and ongoing.  *See* 2010 WL 1416987 at *2 .  As such, where the district court in *Allstate Imaging* determined the list had little actual or potential economic value, the confidential information regarding the Defendant-Nexel relationship still derives actual or potential economic value.

Moreover, as opposed to *McNaughton-McKay*, where the district court denied the party protection of its confidential information under Fed. R. Civ. P. 26(c) due to the party's failure to

11

indicate specific or substantiated allegations of harm, in this case, the Affidavit of Niemczyk indicates the specific information which would be disclosed and the harm resulting from such disclosure. Mr. Niemczyk's Affidavit states that disclosure of the Exclusive Distribution Agreement, including all drafts of it, would reveal to Plaintiff information such as customer contacts, product prices and pricing structures, and future product planning and marketing strategies. The production of a document titled "Protocol of Intentions," would reveal Defendant and Nexel's strategic product planning, technical specifications, future marketing plans and projects, manufacturing and supply plans regarding products yet to be produced, and the future establishment of price policy regarding the future projects. Similar information would be revealed by producing documents of all of the communications between Defendant and Nexel concerning Plaintiff, or UIMDB. As such, this information has economic value from not being known to others.

### b. *Reasonable efforts to maintain secrecy*

After review of the Affidavits of Niemcyk and Bonham, both companies have taken reasonable efforts to maintain secrecy of the requested information, which Plaintiff does not explicitly rebut. Bonham's Affidavit states that Nexel's business with UIMDB is subject to a confidentially agreement, and that Nexel's business with other Russian companies is strictly confidential. Niemczyk's Affidavit shows the existence of a non-disclosure agreement between Nexel and Defendant, which prohibits the disclosure of certain confidential information and trade secrets without the other party's written consent. The agreement also specifies that Nexel and Defendant will continue to internally protect such information from disclosure by each respective party's employees. According to Niemczyk, both Defendant and Nexel have fully complied with the terms of the non-compete agreement. Such efforts mean that Nexel and Defendant's proprietary

information, such as current, past, and future product markets, future suppliers and customers, product pricing, product applications, marketing strategies, and technical documentation have remained entirely confidential and secret between Defendant and Nexel. Thus, the Court finds that the actions by Nexel and Defendant and the relevant non-compete agreements between Nexel and Defendant are reasonable efforts to maintain the secrecy of their relationship.

With respect to any arguments made regarding the SPO, the Court declines to accept it as a proper means to protect Nexel from harm by the disclosure of Nexel's information.[10]  The SPO expressly states that "all documents produced to *any Party* in this action" are subject to the terms of it. (emphasis added).  Although the SPO applies in the Massachusetts Case, it is not clear from the record whether the SPO protects documents produced in accordance with a subpoena issued by this Court or whether the SPO protects documents produced by Nexel, a non-party, to Plaintiff, a party in the Massachusetts Case.  *See McNaughton-McKay*, 2010 WL 2560047, at *3 (finding no harm where a stipulated protective order expressly afforded protection to documents produced by a non-party); *Insulate Am. v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D. N.C. 2005) (noting that despite a protective order in the underlying case there was a question as to whether the protective order would protect documents produced by a non-party).  Having determined that the production of documents requested and specific testimony related to those documents is a "trade secret," and that the SPO may not afford reasonable protection to Nexel, the Court quashes Plaintiff's subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(B).

### IV. CONCLUSION

---

[10] Plaintiff argues that even if Nexel's information was protected as trade secrets or confidential business information, the SPO in the Massachusetts Case would protect Nexel and Defendant from any harm caused by disclosure of the information.

Accordingly, IT IS HEREBY ORDERED that Nexel Defense and Aerospace, Inc's Motion to Quash Third-Party Subpoena [dkt 3] and renewed Motion to Quash Third-Party Subpoena [dkt 14][dkt 1] are GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Supplemental Exhibits [dkt 12] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Cross-motion to Compel Discovery from Nexel [dkt 7] is DENIED.

IT IS FURTHER ORDERED that the December 30, 2010, subpoena served upon Nexel is quashed pursuant to Fed. R. Civ. P. 45(c)(3)(B).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  May 24, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 24, 2011.

S/Marie E. Verlinde
Case Manager
(810) 984-3290

14